FILED

MAY 29 2003



UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

BRAD HANSON  
457 Upton Avenue South  
Minneapolis, MN 55405  

    Plaintiff,

v.

OFFICE OF SENATOR MARK DAYTON  
SR-346, Russell Senate Office Building  
Washington, DC 20510  

    Defendant.

CASE NUMBER 1:03CV01149

JUDGE: Richard J. Leon

DECK TYPE: Employment Discrimination

DATE STAMP: 05/29/2003

## COMPLAINT FOR RELIEF FROM UNLAWFUL EMPLOYMENT PRACTICES

1. Brad Hanson served with distinction in Mark Dayton's campaign for the Senate in 2000 and, after Senator Dayton was elected, as his Minnesota Office Director. The Senator often praised Hanson's work. But on July 3, 2002, Senator Dayton fired Hanson -- without warning -- after learning that he needed heart surgery that would require him to be out of the office. That was unlawful.

### Jurisdiction

2. This is an action under the Congressional Accountability Act, 2 U.S.C. §§ 1301 et seq., seeking damages and other relief for violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2611 et seq., the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. This Court has jurisdiction under 2 U.S.C. § 1408(a). Venue lies in this District under 2 U.S.C. § 1404(2).

## Parties

3. Plaintiff Brad Hanson is a lifelong resident of Minnesota. He has known Mark Dayton for many years, and their families have been friendly. Until his unlawful firing, Hanson was employed by the defendant Office of Senator Mark Dayton. Hanson is a "covered employee" under 2 U.S.C. § 1301(3).

4. Defendant Office of Senator Mark Dayton (the Office) is Senator Dayton's personal Senate office. The Office is plaintiff Hanson's "employing office" under 2 U.S.C. § 1301(9)(A).

## Factual Background

5. Brad Hanson joined Mark Dayton's Senate campaign in July 2000. Hanson designed and ran an advocacy program, the Health Care Help Line, which offered assistance to people having difficulties with their health insurance carriers, HMO's or physicians. The program was extraordinarily effective, both substantively and as a political asset during the campaign. As a result, Senator-elect Dayton publicly praised Hanson on election night and said that he wanted Hanson to be with him as long as he held office.

6. In January 2001, Hanson began working for the defendant Office of Senator Mark Dayton, at an annual salary of $45,000. Hanson's title was State Office Manager, and he was instrumental in setting up the Senator's three local offices in Minnesota, in Ft. Snelling, Thief River Falls and Biwabik. Hanson also oversaw the transition of the Health Care Help Line to Senator Dayton's personal Senate office. Hanson's heavy workload entailed 60-hour weeks for several months and also considerable overtime thereafter. He was never paid for this overtime, however, even though his job duties did not qualify him as an employee who was exempt from overtime payments under the Fair Labor Standards Act.

7. Hanson worked in Senator Dayton's Ft. Snelling office. On several occasions, the Senator complimented him for his work, and he was often asked to handle delicate or thorny issues. Hanson's effectiveness was recognized in January 2002 when he received a salary increase of $5,000, as well as a bonus.

8. Early in 2002, Hanson began experiencing cardiac arrhythmia. He consulted a physician, who advised him that a surgical procedure, called a coronary ablation, was required. The procedure would only involve a short hospitalization, but a recovery period of two to three weeks would likely be needed.

9. Hanson wanted to tell Senator Dayton personally about his need for this operation, and he scheduled a brief meeting with the Senator on July 3, 2002 when he was going to be in the Ft. Snelling office where Hanson worked. Before July 3, Hanson told other staff members about his need for heart surgery.

10. Hanson met with Senator Dayton at the Ft. Snelling office on July 3, 2002, as scheduled. The meeting had not gone on for more than five minutes when the Senator abruptly told Hanson, "You're done." He did not explain why. A short time later, Senator Dayton informed the staff in the Ft. Snelling office that Hanson was leaving. Again, he gave no explanation.

11. At the meeting on July 3, 2002, Senator Dayton told Hanson that he should no longer report to the office but should instead go on medical leave. On July 17 Matt McGowan, Senator Dayton's Washington Office Manager, called Hanson at home and informed him that he would be terminated as of September 30. Hanson's last day on the payroll was September 30, 2002.

12. Hanson's heart surgery was performed following his termination from the payroll. The operation was successful, and Hanson fully recovered.

13. Before his summary firing on July 3, 2002, Hanson was given no warning that his job was in jeopardy. On the contrary, his work had been praised, and there was no basis for the termination. Senator Dayton fired Hanson because he needed to be out of the office to recover from heart surgery, in violation of the Family and Medical Leave Act, and because the Senator erroneously perceived Hanson to be disabled, in violation of the Americans with Disabilities Act. In addition, the failure to compensate Hanson for the overtime he worked violated the Fair Labor Standards Act.

14. The actions of Senator Dayton as described herein are the actions of the defendant Office. The Office's conduct has caused plaintiff Hanson to suffer both monetary and non-monetary losses. Hanson's monetary losses include loss of salary and other compensation, both past and future, and loss of overtime payments. His non-monetary losses include emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

15. All prerequisites to suit under the Congressional Accountability Act have been satisfied. In particular, plaintiff Hanson has completed both counseling under 2 U.S.C. § 1402 and mediation under 2 U.S.C. § 1403.

## COUNT ONE
## FAMILY AND MEDICAL LEAVE ACT

16. Paragraphs 1-15 are realleged.

17. Plaintiff Hanson is an "eligible employee" under the Family and Medical Leave Act, as defined in 2 U.S.C. § 1312(a)(2)(B). The Office's conduct as described herein, including the firing of plaintiff Hanson, constituted a violation of the Family and Medical Leave Act, as applied to Congress by 2 U.S.C. §§ 1302(a)(5), 1312.

## COUNT TWO
## AMERICANS WITH DISABILITIES ACT

18. Paragraphs 1-15 are realleged.

19. The Office's conduct as described herein, including the firing of plaintiff Hanson, constituted a violation of the Americans with Disabilities Act, as applied to Congress by 2 U.S.C. §§ 1302(a)(3), 1311(a)(3), (b)(3).

## COUNT THREE
## FAIR LABOR STANDARDS ACT

20. Paragraphs 1-15 are realleged.

21. The Office's conduct as described herein, including the failure to pay plaintiff Hanson for working overtime, constituted a violation of the Fair Labor Standards Act, as applied to Congress by 2 U.S.C. §§ 1302(a)(1), 1313.

## REQUEST FOR RELIEF

Plaintiff requests that this Court:

1) reinstate plaintiff in his position with the Office, together with full back pay and related benefits, or alternatively, award plaintiff front pay in lieu of reinstatement, together with full back pay and related benefits;

2) award plaintiff liquidated damages, as authorized by the Family and Medical Leave Act and the Fair Labor Standards Act;

3) award plaintiff compensatory damages, as authorized by 42 U.S.C. § 1981a for violations of the Americans with Disabilities Act;

4) enjoin defendant from retaliating against plaintiff for pursuing this action;

5) award plaintiff his costs and reasonable attorneys' fees;

6) award plaintiff prejudgment interest on all monetary sums awarded;

7) award such other relief as the Court deems just.

### JURY DEMAND

Plaintiff requests trial by jury.

_Richard A. Salzman_
Richard A. Salzman 422497
Douglas B. Huron 89326
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for plaintiff