UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB 1 5 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| BRAD HANSON,              ) | |
|            Plaintiff,   ) | |
| v.                        ) | Civil Case No. 03-1149 (RJL) |
| OFFICE OF SENATOR         ) | |
| MARK DAYTON,              ) | |
|            Defendant.   ) | |

## MEMORANDUM OPINION
(February 15, 2008) [#27]

Plaintiff, Brad Hanson ("Hanson") filed this lawsuit against the Office of Senator Mark Dayton ("defendant" or the "Dayton Office") on May 29, 2003. Defendant's initial motion to dismiss on the grounds of Speech or Debate Clause immunity was denied by this Court and upheld by our Court of Appeals. *Fields v. Office of Representative Eddie Bernice Johnson*, 459 F.3d 1, 17 (D.C. Cir. 2006) (*en banc*).[1] Undeterred, defendant now seeks to dismiss this case on the grounds of abatement and mootness. After consideration of the parties' pleadings, oral argument and the entire record herein, the Court DENIES defendant's motion.

### BACKGROUND

After working on Senator Mark Dayton's ("Senator" or "Senator Dayton") campaign in 2000, Hanson served in Senator Dayton's Fort Snelling, Minnesota office.

---

[1] Our Circuit Court joined the Dayton Office's appeal with an appeal from the denial of a motion to dismiss in a similar lawsuit against the Office of Representative Eddie Bernice Johnson.

(Compl. ¶¶ 5-6.) In 2002, Hanson learned he needed cardiac surgery and would need a short period of hospitalization to recover. (*Id.* ¶ 8.) Hanson alleges that when he informed Senator Dayton, on July 3, 2002, that he needed cardiac surgery, the Senator responded by saying, "You're done." (*Id.* ¶ 10.) Indeed, the Senator is alleged to have told Hanson to go on medical leave, only to inform him several weeks later that he would be terminated effective September 30, 2002. (*Id.* ¶ 11.) Hanson further alleges that he was fired because he needed time off to recover from cardiac surgery and that he was perceived as disabled. (*Id.* ¶ 13.)

Subsequently, on May 29, 2003, Hanson filed this lawsuit under the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301, *et seq.*, alleging violations of the CAA and three other federal statutes: the Family and Medical Leave Act, the Americans with Disabilities Act, and the Fair Labor Standards Act[2].

On September 12, 2003, the Dayton Office moved to dismiss the Complaint on the grounds that it was immune from suit under the Speech or Debate Clause of the Constitution, Art. 1, § 6, cl. 1. This Court denied defendant's motion on September 7, 2004, and the Dayton Office appealed to our Circuit Court. On August 18, 2006, our Circuit Court, sitting *en banc*, unanimously affirmed this Court's order denying dismissal. *Fields v. Office of Representative Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006) (*en banc*).

---

[2] In addition to alleging unlawful termination, Hanson also alleges that he was not paid overtime while employed by Senator Dayton in violation of the Fair Labor Standards Act. (Compl. ¶ 6.)

2

In October 2006, the Dayton Office sought direct review of the Circuit Court's opinion in the Supreme Court pursuant to § 412 of the CAA. While the Supreme Court action was pending, Senator Dayton's term expired on January 3, 2007. As a result, the Dayton Office filed a suggestion of mootness with the Supreme Court. On May 21, 2007, the Supreme Court determined it did not have jurisdiction over the direct appeal.[3] *Office of Senator Mark Dayton v. Hanson*, 127 S. Ct. 2018, 2020 (2007). It expressly refrained from deciding whether the lawsuit had become moot when Senator Dayton's term expired and remanded the case back to this Court for further proceedings. *See id.* at 2021.

A few months later, on August 22, 2007, the Dayton Office filed this motion to dismiss on the grounds of abatement and mootness. After a status conference during which the Court indicated it was not inclined to grant the motion, the Dayton Office filed a motion to transfer this case to the District of Minnesota on September 17, 2007, nearly four and a half years after Hanson filed his Complaint. This Court denied the motion to transfer on November 26, 2007.

## DISCUSSION

**I.   Congressional Accountability Act**

In passing the CAA in 1995, Congress provided "covered employees" rights and remedies conferred by various labor and employment laws previously not applicable to

---

[3] In the alternative, the Supreme Court considered the Dayton Office's jurisdictional statement as a petition for a writ of certiorari, which it denied. *Office of Senator Mark Dayton v. Hanson*, 127 S. Ct. 2018, 2020 (2007).

Case 1:03-cv-01149-RJL   Document 37   Filed 02/19/08   Page 6 of 18

the legislative branch.[4]  2 U.S.C. § 1301, *et seq.*; *Fields*, 459 F.3d at 4.  In addition to making these laws applicable to Congressional employees, Congress created a cause of action for these "covered employees" to initiate suits in federal court for violations of the CAA.  *See* 2 U.S.C. § 1404(2).  The "covered employees" eligible to take advantage of the CAA include any individual who is an "employee of . . . the Senate."  *See* 2 U.S.C. § 1301(3)(B).

Congress created the Office of Compliance ("OOC") as an independent office within the legislative branch, to handle the administration of the CAA.  *See id.* § 1381.  The OOC has the responsibility, *inter alia*, to administer the complaint procedure for employees wishing to bring charges of a violation pursuant to the CAA.  *See id.* §§ 1401-06.

The first step of the complaint procedure requires all employees to participate in counseling and mediation sessions with the OOC.  *See* 2 U.S.C. §§ 1401-03.  If such efforts fail, the employee can then choose between filing a complaint with the OOC, resulting in a hearing before a hearing officer, or filing a complaint in federal district court.  *See id.* §§ 1401, 1404.  If an employee elects the first option and gets an unfavorable result, he may appeal to the Board of Directors of the OOC and then to the

---

[4] The CAA makes the following statutes applicable to Congress: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611 *et seq.*; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*; Chapter 71 of Title 5; the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2001 *et seq.*; the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; and Chapter 43 of Title 38.  *See* 2 U.S.C. § 1302.

Case 1:03-cv-01149-RJL   Document 37   Filed 02/19/08   Page 8 of 18

United States Court of Appeals for the Federal Circuit. *See id.* §§ 1406-07. Regardless of which option the employee pursues, the CAA requires that the complaint name "the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred" as the defendant. *Id.* § 1408(b). The CAA defines an "employing office" as "the personal office of a Member of the House of Representatives or of a Senator." *Id.* § 1301(9)(A).

Once a complaint is initiated, either the Office of House Employment Counsel or the Senate Chief Counsel for Employment represents the employing office. *See id.* § 1408(d). Any resulting judgments are paid from an OOC account in the Treasury of the United States. *See id.* § 1415. This structure prevents an individual member of Congress from being named as the defendant or being liable for damages. Does it, however, result in the dismissal of suit filed against a Member's office *after* the Member has left office? I think not!

## II.     Expiration of the Senator's Term Did Not Abate or Moot this Lawsuit

"[A]batement of a case usually follows, as of course, when there is no one to respond to a judgment which might be or has been entered in a case." *Acheson v. Fujiko Furusho*, 212 F.2d 284, 288 (9th Cir. 1954), *cited with approval in Bastien v. Office of Senator Ben Nighthorse Campbell*, No. 01-0799, 2005 WL 3334359, *3 (D. Colo. Dec. 5, 2005). Thus, "[t]he absence of a necessary party and the statutory barrier to substitution go to jurisdiction." *Snyder v. Buck*, 340 U.S. 15, 22 (1950).

Here, the defendant argues that since the Dayton Office ceased to exist when Senator Dayton's term ended on January 3, 2007, this lawsuit abated. Thus, in the

5

absence of a non-abatement or a successor provision in the CAA, this Court lacks jurisdiction to hear this case. (*See* Def.'s Stmt. of Points & Auth. in Supp. of Its Mot. to Dismiss on the Grounds of Abatement & Mootness ("Def.'s Stmt.") 2.) Whether this line of reasoning holds water, of course, necessarily depends on whether the Dayton Office ceased to exist, as a matter of law, when Senator Dayton's term expired. For the following reasons, I have concluded that it did not!

First, nothing in the CAA indicates that the "employing office" ceases to exist for CAA purposes upon expiration of a Senator's term. To the contrary, a review of the CAA indicates that Congress intended for it, as an institution, to be accountable for discrimination against its employees.[5] *See Bastien v. Office of Senator Ben Nighthorse Campbell*, No. 01-0799, 2005 WL 3334359, at *4 (D. Colo. 2005). To effectuate this intent, it provided for "covered employees," *i.e.* employees of the House or Senate—*not* employees of individual offices—to bring lawsuits against their "employing office," defined by the CAA as the personal office of a Senator. There is no indication, in the text or otherwise, that Congress intended this naming device to insulate former Senators' offices from suit.

For example, disbursements from the judgment fund, which has been set aside to pay judgments, are not conditioned on the Senator still being in office. *See* 2 U.S.C. § 1415. To the contrary, the term "employing office" merely denotes an administrative entity used to facilitate administration of the CAA. Indeed, Judge Brown, in her

---

[5] The Dayton Office's sovereign immunity argument does not warrant dismissal of this lawsuit. There is no doubt that Congress waived sovereign immunity when it passed the CAA.

concurring opinion in *Fields v. Office of Representative Eddie Bernice Johnson*, characterized the "employing office" as an administrative division within Congress that serves as a "prescribed label" for the defendant in a CAA lawsuit, not an independent legal entity with independent legal interests.[6] *See* 459 F.3d at 28. By setting up the CAA in this manner, Congress intended to provide the means—both administratively and financially—to guarantee its employees redress for labor or employment violations. Its use of "employing office" served a procedural role and was not intended to be read in such as way as to preclude a timely-filed suit.[7] *See also* 141 Cong. Rec. H252, H273 (Jan. 17, 1995) (statement of S. Fawell) ("It should be noted, however, that apparently no Member of Congress may be personally sued, that is, such a suit would be against an employee's employing office, a term of new art which avoids naming any Member of Congress as the specific responding party to such a law suit.").

Finally, the legislative history of the CAA further supports this conclusion. Numerous Members speaking on behalf of the legislation noted that the CAA would provide federal legislative employees with the same employment and labor protections as workers in the private sector. *See, e.g.*, 141 Cong. Rec. S439, S442 (Jan. 5, 1995)

---

[6] Judges Sentelle and Griffith joined Judge Brown's concurring opinion. Although the majority of the *en banc* Court disagreed with Judge Brown's analysis of whether the "employing office" can invoke the Speech or Debate Clause on behalf of the member, its criticism of her discussion of the meaning of "employing office" was focused on the fact that an analysis of whether the "employing office" was an alter ego of the Member was irrelevant to whether the Speech or Debate Clause rendered the Member immune under the CAA. *See Fields*, 459 F.3d at 14 n.22.

[7] The Dayton's Office citation to the Senate Handbook provisions that provide for an office to assist Senator Dayton in carrying out his duties while in office do not dictate a contrary result. (*See* Def.'s Stmt. at 4-5.) Rather, that a Senator's office comes into existence to, *inter alia*, purchase equipment and process vouchers, buttresses the fact that the Dayton Office is in actuality a creation for administrative ease.

(statement of S. Grassley) ("The purpose of [the CAA] is to fully apply antidiscrimination and employee protection laws to Congress."). In fact, the *amicus* brief filed by the Senate in the Supreme Court action in this case expressly argued that expiration of a Senator's term neither abated nor mooted any action because the defendant "remains capable of vigorously defending this action and of satisfying any monetary judgment against it." Br. for the U.S. Senate as *Amicus Curiae* Supporting Appellee, *Office of Senator Mark Dayton v. Hanson*, 127 S. Ct. 2018 (2007) (No. 06-618), 2007 U.S. S. Ct. Briefs LEXIS 323, **20. Furthermore, in another *amicus* brief, congressmen noted that any other construction "would render the [CAA's] protections wholly illusory and defeat the goals of the CAA." Br. of Congressmen Barney Frank & Christopher Shays as *Amici Curiae* in Supp. of Appellee, *Office of Senator Mark Dayton v. Hanson*, 127 S. Ct. 2018 (2007) (No. 06-618), 2007 U.S. S. Ct. Briefs LEXIS 328, **20. Simply put, interpreting the CAA in the manner advanced by the Dayton Office would effectively immunize a lame duck Member or Senator who may engage in the very conduct the CAA was designed to protect employees from. And that is a consequence wholly contradictory to Congress' clearly-stated intent.[8]

---

[8] The Dayton Office's arguments in support of its argument that this case is moot are substantially similar to its arguments that the case abated. For the same reasons, the Court finds that argument without merit.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Dayton Office's Motion to Dismiss on the Grounds of Abatement and Mootness. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*

RICHARD J. LEON
United States District Judge
